UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONNA R. NOVICK,

                            Plaintiff,

v.                                                 Case No. 5:12-CV-1577 (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

DONNA R. NOVICK
 Plaintiff, *Pro Se*
P.O. Box 210
5222 Telephone Road
Cincinnatus, NY 13040-0210

U.S. SOCIAL SECURITY ADMIN.                DENNIS J. CANNING, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

**<u>DECISION and ORDER</u>**

      Currently before the Court, in this Social Security action filed by Donna R. Novick ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 8-9.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on June 8, 1948. Plaintiff has a master's degree, and has worked as a teacher. Generally, Plaintiff's alleged disability consists of chronic obstructive pulmonary disease ("COPD"), diabetes, sleep apnea, bilateral carpal tunnel syndrome, and obesity. Plaintiff's alleged onset date is June 28, 1999.

### B. Procedural History

On August 27, 1999, Plaintiff applied for Disability Insurance Benefits. (T. 15.) On December 14, 1999, Plaintiff was found to be disabled within the meaning of the Social Security Act due to chronic pulmonary insufficiency, diabetes, sleep apnea, and obesity, and was awarded benefits. In 2002, a continuing disability review was commenced and resulted in a May 7, 2002, continuance based on Plaintiff's chronic obstructive pulmonary disease ("COPD"), diabetes, sleep apnea, and obesity.

At some point before April 23, 2003, the Social Security Administration obtained information that Plaintiff had returned to work. Plaintiff was given a trial work period and an extended period of eligibility. The Social Security Administration determined that, at the conclusion of her trial work period, Plaintiff continued to engage in substantial gainful activity and, therefore, was not disabled. In 2004, a second continuing disability review was commenced and resulted in a April 5, 2004, continuance based on Plaintiff's COPD, diabetes, sleep apnea, and obesity.

On July 22, 2004, Plaintiff timely filed a request for hearing before an Administrative Law Judge ("ALJ"). On April 6, 2006, Plaintiff appeared in a hearing before the ALJ, Elizabeth W. Koennecke. (T. 1892-912.) Plaintiff appeared in supplemental hearings held on May 25,

2006, and October 2, 2006. (T. 1913-84. ) On November 17, 2006, the ALJ issued a partially favorable decision with regard to the issue of waiver of overpayment of benefits, after which Plaintiff timely filed a request for review. (Exh. 65.) On September 3, 2009, the Appeals Council remanded the case for further proceedings. (Exh. 115.)

On June 23, 2010, Plaintiff once again appeared in a hearing before the ALJ. (T. 1985-2018.) On October 14, 2010, the ALJ issued a second written decision, after which Plaintiff once again filed a request for review. (T. 12-31.) On August 15, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 7-10.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following three findings of fact and conclusions of law. (T. 21-30.) First, the ALJ found that Plaintiff engaged in substantial gainful activity during the following four periods: February to June of 2001, September to December of 2001, January to June of 2002, and January to June of 2003. (T. 21-29.) Second, the ALJ found that Plaintiff completed a trial work period that began in February 2001 and ended in December 2001. (T. 29-30.) Third, the ALJ found that Plaintiff's disability ended in January 2002, the first month after the completion of the trial work period in which Plaintiff engaged in substantial gainful activity. (T. 30.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes nine arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that (1) the ALJ failed to apply the correct legal standards in this matter and (2) the ALJ's factual findings were not supported by substantial evidence. (Dkt. No. 8, at 6 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ did not properly consider all of the

medical evidence in assessing Plaintiff's impairment-related work expenses and work subsidy. (*Id*.) Third, Plaintiff argues that the ALJ failed to address the overpayment issues. (*Id*.)

Fourth, Plaintiff argues that the ALJ failed to provide Plaintiff with "due process and a fair hearing" because the administrative record was missing more than 1,500 pages of evidence at the time of the hearing on June 24, 2010. (*Id.*) Plaintiff further argues that the medical records are still missing from the administrative record. (*Id.*)

Fifth, Plaintiff argues that the ALJ erred in determining the amount of Plaintiff's unearned income used to calculate the amount of Plaintiff's earned income. (*Id.* at 8-9.) Sixth, Plaintiff argues that the ALJ abused her discretion in determining that Plaintiff could have used public transportation (rather than taxi service) as an impairment-related work expense, despite medical evidence indicating Plaintiff's serious physical impairments and lack of mobility. (*Id.* at 9.)

Seventh, Plaintiff argues that the ALJ abused her discretion and made an error of law in her capacity as an ALJ "by interposing slanderous and hearsay allegations" against Plaintiff and her husband in the decision of October 14, 2010, by referencing "false allegations" and "an alleged violation" that was dismissed in district court. (*Id.* at 9.)

Eighth, Plaintiff argues that the ALJ "abused her discretion and the evidence of record" and thus failed to find that Plaintiff's impairment-related work expenses were reasonable. (*Id.* at 9.) Plaintiff argues that the ALJ should have found that her expense for taxi service to and from work was reasonable because the regulations provide that the cost of a necessary impairment-related work expense must be deemed reasonable if it represents the standard charge for such an expense or service related to commuting to work with a disability. (*Id.*)

Ninth, and finally, Plaintiff essentially argues that the ALJ erred by not reaching all of the overpayment issues (because that the Appeals Council determined that the waiver of overpayment issue was not properly before her). (*Id.* at 9-10.) Plaintiff argues that the Appeal Council's determination only pertained to the recovery of overpayment issue, not the circumstances that led to the overpayment of disability benefits. (*Id.*) Plaintiff argues that the ALJ erred by not allowing Plaintiff to elaborate on the circumstances that led to the overpayment of disability benefits, and the specific grounds of her two reconsideration filings and requests to the ALJ. (*Id.*)

Defendant makes four arguments in support of her motion for judgment on the pleadings. First, Defendant argues that Plaintiff earned income at substantial gainful activity ("SGA") levels from February to June of 2001, September to December of 2001, January to June of 2002, and January to June of 2003. (Dkt. No. 9, at 5-10 [Def.'s Mem. of Law].) Second, Defendant argues that Plaintiff's income during these periods did not go below SGA level notwithstanding any assistance received or impairment-related work expenses incurred. (*Id.* at 10-13.) Third, Defendant argues that the ALJ conducted a fair hearing. (*Id.* at 13-15.) Fourth, and finally, Defendant argues that the ALJ properly determined that the waiver of overpayment issue was not before her. (*Id.* at 15-18.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See*

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard for Continuing Disability

An individual's continued entitlement to disability benefits under the Social Security Act is conditioned on periodic review. 42 U.S.C. § 423(f); 20 C.F.R. § 404.1590, 404.1589. The Commissioner may terminate disbursement of benefits upon finding that an individual's impairment is no longer disabling. 42 U.S.C. § 423(f). The Commissioner has established an eight-step evaluation process to determine whether an individual continues to be disabled as defined by the Social Security Act. 20 C.F.R. § 404.1594. *Id.*

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, and any applicable trial work period has been completed, the claimant is no longer disabled. If not, the Commissioner's review proceeds.

At step two, the Commissioner determines whether the claimant's impairment, or combination of impairments, meets or equals the severity of an impairment listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1594(f)(2). If so, the claimant's disability continues. If not, the Commissioner's review proceeds.

At step three, the Commissioner must determine whether there has been medical improvement. 20 C.F.R. § 404.1594(f)(3). Medical improvement is any decrease in medical severity of the claimant's impairment(s) as established by improvement in symptoms, signs and/or laboratory findings. 20 C.F.R. § 404.1594(b)(1). If medical improvement has occurred, the Commissioner's review proceeds to step four. If not, the Commissioner's review proceeds to step five.

At step four, the Commissioner must determine whether medical improvement is related to the ability to work. 20 C.F.R. § 404.1594(f)(4). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities. 20 C.F.R. § 404.1594(b)(3). If medical improvement is unrelated to the claimant's ability to work,

the Commissioner proceeds to step five. If medical improvement is related to the claimant's ability to work, the Commissioner's review proceeds to step six.

At step five, the Commissioner must determine whether an exception to medical improvement applies. 20 C.F.R. § 404.1594(f)(5). There are two groups of medical exceptions set forth in 20 C.F.R. § 404.1594(d) and (e). If an exception from the first group applies, the analysis proceeds to step six. If an exception from the second group applies, the claimant's disability has ended. If no exception applies, the claimant's disability continues.

At step six, the Commissioner must determine whether all of the claimant's current impairments in combination are severe. 20 C.F.R. § 404.1594(f)(6). If all current impairments in combination do not significantly limit the claimant's ability to perform basic work activities, the claimant is no longer disabled. If all current impairments in combination significantly limit the claimant's ability to perform basic work activities, the analysis proceeds to step seven.

At step seven, the Commissioner must assess the claimant's residual functional capacity ("RFC") based upon all current impairments and determine whether the claimant is able to perform past relevant work. 20 C.F.R. § 404.1594(f)(7). If capable of performing past work, the claimant is no longer disabled. If not, the analysis proceeds to step eight.

At step eight, the Commissioner must determine whether there is other existing work that the claimant can perform given the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1594(f)(8). If capable of performing other work, the claimant is no longer disabled. If incapable of performing other work, the claimant's disability is found to continue.

Review of the claimant's disability may cease and benefits continued at any point if the Commissioner finds sufficient evidence that the claimant remains unable to engage in substantial gainful activity. 20 C.F.R. § 404.1594(f).

## III. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized below.

### A. Whether the ALJ Erred in Determining that Plaintiff Earned Income at SGA Level from February to June of 2001, September to December of 2001, January to June of 2002, and January to June of 2003

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 9, at 5-10 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step one of the sequential analysis, the ALJ must consider a plaintiff's work activity during the period of alleged disability. 20 C.F.R. § 404.1520(a)(i). If a plaintiff is working and the work constitutes substantial gainful activity, a plaintiff will be found not disabled regardless of his or her age, education, and work experience. 20 C.F.R. § 404.1520(b).

#### i. February to June of 2001, and September to December of 2001 (Plaintiff's Trial Work Period)

Under the regulations, a trial work period ("TWP") is a period during which a plaintiff may test his or her ability to work and still be considered disabled. 20 C.F.R. § 404.1592(a). During this period, a plaintiff may perform services in as many as nine months, which do not have to be consecutive.[1] *Id.* Those services will not be considered as showing that a plaintiff's disability has ended until a plaintiff has performed services in at least nine months. *Id.* However, after the trial work period has ended, the work performed during the trial work period will be considered in determining whether a plaintiff's disability ended at any time after the trial work period. *Id.*

---

[1] Services are "any activity (whether legal or illegal), even though it is not substantial gainful activity, which is done in employment or self-employment for pay or profit, or is the kind normally done for pay or profit." 20 C.F.R. § 404.1592(b). Work without reumeration is generally not considered to be services "if it is done merely as therapy or training or if it is work usually done in a daily routine around the house or in self-care." *Id.*

Here, Plaintiff was found to be disabled with an established onset date of June 28, 1999. (T. 15.) Plaintiff returned to work as a teacher for a trial work period from February 2001 to June 2001, and from September 2001 to December 2001. (T. 15, 32-33.) In determining whether Plaintiff's work during the trial work period demonstrated an ability to engage in SGA, the ALJ considered Plaintiff's gross earnings. (T. 22.)

The ALJ noted that pay stubs indicated that Plaintiff's gross earnings from February to June of 2001 totaled $26,600.07, and that her gross earnings from September to December of 2001 totaled $17,233.44. (*Id.*) The ALJ noted that Plaintiff's average monthly earnings for these periods exceeded the presumptive level for substantial gainful activity for 2001, which was $740.00 per month.[2] (*Id.*)

### a. Unearned Income

The ALJ considered that, according to the school district that employed Plaintiff, 34 percent of a teacher's earnings are considered unearned income. (T. 22.) The ALJ found that, after deducting this unearned portion of Plaintiff's earnings, her earnings still exceeded SGA level. (*Id.*) More specifically, the ALJ determined that (1) Plaintiff's earnings for February to June of 2001 totaled $17.556.05, which exceeded SGA when averaged over five months, and (2) Plaintiff's earnings for September of December of 2001 totaled $11,704.07, which exceeded SGA when averaged over four months. (*Id.*)

### b. Per Diem Pay Rate

The ALJ accepted Plaintiff's contention that "only 'earned' (*i.e.*, 'countable') income as defined in POMS DI 10505.010 is counted for the purposes of determining a TWP [(trial work period)]. That is, 'earned' income excludes sick and vacation pay." (T. 22.) The ALJ

---

[2] Substantial Gainful Activity Monetary Amounts, Social Security Administration, http//www.ssa.gov/OACT/COLA/sga.html (last visited Apr. 12, 2016).

considered Plaintiff's claims that the most she should be charged with earning each workday is $127.00, the per diem amount that her school district paid through the absent teacher program that she participated in from 2001 to 2003. (T. 22-23.) Plaintiff's school district indicated that, due to Plaintiff's medical condition, she performed less work than other teachers with her years of experience. (T. 23.) However, the ALJ found that, even using the $127.00 per diem amount, Plaintiff's earnings still exceeded the $740.00 monthly SGA amount during her trial work period. (*Id.*)

### c. Plaintiff's Alleged Absences

The ALJ considered Plaintiff's arguments that the ALJ's SGA calculations for her trial work period should account for Plaintiff's absences during the period. (T. 22-24.) The ALJ noted that, despite conflicting evidence from her school district, Plaintiff alleged that she only worked ten days in February and six days in March of 2001. (T. 23.) The ALJ determined that, even using Plaintiff's alleged number of absences and the $127.00 per diem rate, Plaintiff's earnings still exceeded SGA level during her trial work period. (T. 23-25.)

### ii. January 2002 to June 2002 (Plaintiff's Extended Period of Eligibility)

A claimant receives an extended period of eligibility that begins after the trial period ends. SSA POMS DI 10505.010. This is a 36-month period during which a claimant will receive disability benefit payments for any month(s) in which her work is not substantial if the claimant's health problems still meet the Commissioner's rules. (*Id.*)

Here, Plaintiff's trial work period ended in December 2001, and her extended period of eligibility began on January 1, 2002. (T. 34.) The ALJ noted that Plaintiff earned $24,500.00 from January to June of 2002. (T. 22.) The ALJ further noted that, after deducting the unearned 34 percent portion, Plaintiff's average earnings for this period were $2,694.00 per month, which

11

exceeded the $780.00 presumptive monthly SGA amount for 2002. (*Id.*) Moreover, the ALJ determined that, even using Plaintiff's alleged number of absences and the $127.00 per diem rate, Plaintiff's earnings exceeded SGA level for the period from January to June of 2002. (T. 23-25.)

### iii. January 2003 to June 2003

The ALJ found that Plaintiff did not work from July to December of 2002, other than on December 20, 2002. (T. 22.) Therefore, the ALJ found that Plaintiff did not engage in SGA during this period. (*Id.*) The ALJ noted that pay stubs showed that Plaintiff earned $37,502.00 from January 2003 to July 2003. (*Id.*) Deducting the unearned 34 percent portion, the ALJ calculated that Plaintiff's average monthly earnings were $4,123.00, which exceeded the $800 presumptive monthly SGA amount for 2003. (*Id.*) Moreover, the ALJ determined that, even using Plaintiff's alleged number of absences and the $127.00 per diem rate, Plaintiff's earnings still exceeded SGA level during the period from January to June 2003. (T. 23-25.)

For these reasons, substantial evidence supports the ALJ's determination that Plaintiff engaged in SGA level work from February to June 2001, September to December 2001, January to June 2002, and January to June 2003.

### B. Whether the ALJ Erred in Determining that Plaintiff's Income During the Relevant Periods Constituted SGA Despite Assistance that Plaintiff Received and Impairment-Related Work Expenses that Plaintiff Allegedly Incurred

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 9, at 10-13 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

After determining that Plaintiff had engaged in SGA level work as discussed above in Part III.A. of this Decision and Order, the ALJ considered Plaintiff's arguments that she had (1) received assistance from other employees in order to perform her reduced work duties as a

teacher, (2) performed administrative work unrelated to her teaching duties, and (2) incurred impairment-related work expenses. (T. 25, 1982.)

### i. Plaintiff's Work Activity and Assistance Received

The ALJ noted that Plaintiff's school district confirmed that she received assistance from a paraprofessional to carry teaching supplies, open classroom windows, go up and down stairs, and go to and from class. (T. 25-26.) However, the school district did not confirm Plaintiff's representations that she received help running classes and lacked authority as a teacher. (T. 24-25.) To the contrary, Plaintiff was still the teacher in charge of her class, and Plaintiff indicated that she graded tests and report cards, and performed administrative clerical work. (T. 25-26, 189, 1368.) Moreover, the school district did not set a value on the assistance Plaintiff received, and did not indicate that it reduced the $127.00 per diem rate paid to employees in the absent teacher program based on additional assistance given. (T. 26.)

### ii. Plaintiff's Alleged Impairment-Related Work Expenses

When considering a claimant's earnings to decide whether the claimant has performed SGA, impairment-related work expenses are generally deducted. 20 C.F.R. § 404.1576(a). Impairment-related work expenses are "reasonable costs" of certain items and services which, because of a claimant's impairment(s), are needed and used to enable the claimant to work. *Id.* Deductible expenses may include expenses incurred in connection with attendant care services, such as help with bathing or dressing, and work-related functions such as reading or communicating. 20 C.F.R. § 404.1576(c)(1)(i)-(ii). If a claimant's impairment(s) requires her to use driver assistance in order to work, the costs of transportation may be deductible. 20 C.F.R. § 404.1576(c)(6)(iii)(B).

For an impairment-related work expense to be deductible, the expense must be related to the claimant's impairments and incurred while a claimant is working, and the payment for the expense must have been made by the claimant during the month in which the services were rendered. 20 C.F.R. § 404.1576(b)(1)-(5). If the payment is only partially for covered services, then only the portion of the payment that is attributable to the covered services is deductible. 20 C.F.R. § 404.1576(c)(1)(iv).

Plaintiff claims that she required taxi service to get to and from work due to her impairments. (T. 27.) Plaintiff states that she experienced a disabling motor vehicle accident in January 2002 that "exacerbated [her] condition and made [her] permanently and totally disabled." (*Id.*) Plaintiff claims that her impairment-related work expenses were $255.00 per day from January 2003 to June 2003. (T. 28, 183-84.) More specifically, Plaintiff claims that her impairment-related work expenses consisted of: $170.00 per day for taxi service to and from work (including $40.00 in tips); $75.00 for personal assistance to help her in the mornings before work and when she returned from work from George Dinstber (Plaintiff's personal assistant during the period 2001-2003, and Plaintiff's husband since 2008); and $10.00 to Mr. Dinstber for gas. (T. 28.)

The ALJ found that the record did not establish that Plaintiff could not take public transportation or required personal assistance from Mr. Dinstber three to four days a week, and determined that Plaintiff's alleged impairment-related work expenses were not reasonable for the following reasons.[3] (T. 28-29.)

---

[3] The ALJ noted that, under the regulations, impairment-related work expenses are not to be deducted when determining services for purposes of trial work period. (T. 26.) Accordingly, the ALJ noted that any impairment-related work expenses that Plaintiff had during the periods of February to June 2001, and September to December 2001, are irrelevant. (*Id.*)

14

First, the ALJ determined that any alleged extra expenses related to Plaintiff's January 2002 motor vehicle accident do not qualify as impairment-related work expenses because any impairment that resulted from the accident was not part of the basis for Plaintiff's initial award of disability benefits and her continuing disability review (Plaintiff's chronic pulmonary insufficiency, COPD, diabetes, sleep apnea, and obesity).[4] (T. 28.) The ALJ noted that there is no evidence indicating what portion of Plaintiff's claimed impairment-related work expenses were related to the motor vehicle accident. (*Id.*) The ALJ further noted that the medical evidence of record for the period of January 2002 to June 2003 primarily addressed the effects of the January 2002 motor vehicle accident (Plaintiff's cervical spine discomfort and problems with the upper extremities). (*Id.*) Finally, the ALJ noted that the medical evidence regarding Plaintiff's COPD and diabetes during this period was limited to Plaintiff's own statements as to her medical status, with no clinical evidence substantiating limitations based on these impairments. (*Id.*)

Second, the ALJ noted that a portion of Plaintiff's payments to Mr. Dinstber was for performing household chores and making meals, and therefore was for non-work related services. (T. 28.) Payment for non-work related services may not be deducted as impairment-related work expenses under the regulations. 20 C.F.R. § 404.1576(c)(iv). Additionally, the ALJ noted that, while Plaintiff claims that she was largely helpless without assistance, Mr. Dinstber only assisted her three to four days a week, "implying that she was able to manage without his assistance on these other days." (T. 28.)

---

[4] The ALJ also found that Plaintiff's physical therapy for her cervical spine discomfort resulting from the January 2002 motor vehicle accident was not an impairment-related work expense because (1) physical therapy does not satisfy the criteria for an impairment-related work expense, and (2) cervical spine discomfort was not the underlying basis for an award of disability benefits. (T. 29.)

15

Third, the ALJ found that the "overall economics" of Plaintiff's claimed impairment-related work expenses were not reasonable. (T. 29.) According to Plaintiff, she was paying $255.00 per day to get ready and travel to work while her wages (both earned and unearned portions) were about $242.00 to $270.00 per day. (*Id.*) Moreover, the ALJ questioned the reasonableness of spending $40.00 in tips on $130.00 in taxi fares. (*Id.*)

For these reasons, the ALJ's determination was supported by substantial evidence and remand is not required on this basis.

### C. Whether the ALJ Erred in Determining that the Waiver of Overpayment Issue Was Not Before Her

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 9, at 15-18 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff may request a hearing before an ALJ regarding waiver of overpayment recovery (1) if there is an initial determination denying waiver of adjustment or recovery of an overpayment based on a personal conference or (2) if there is an initial determination denying waiver of adjustment or recovery of an overpayment based on a review of the written evidence of record and the determination was made concurrent with, or subsequent to, the reconsideration determination concerning waiver of an overpayment. 20 C.F.R. § 404.930(a)(6)-(7).

Here, the Appeals Council noted that there was no indication that any determination was made concerning waiver of the overpayment of disability benefits. (T. 966.) While the Appeals Council's Remand Order generally directed the ALJ to "address the amount and period of the overpayment," it also specifically stated that the issue of waiver was not properly before the ALJ. (T. 966-67.) Therefore, in the ALJ's decision of October 14, 2010, she properly found that

it would be inappropriate for her to make a determination on the issue of waiver. (T. 16.) Moreover, on August 15, 2012, the Appeals Council found no reason to review the ALJ's decision. (T. 7-8.)

Further, as discussed above in Part III.A. of this Decision and Order, the ALJ properly considered Plaintiff's arguments as to the underlying issues that led to the overpayment within her extensive discussion of Plaintiff's earnings during the period at issue. (T. 22-29.) Moreover, Plaintiff had the opportunity to testify as to these issues during the four hearings, and therefore was not denied the opportunity to elaborate on the circumstances that led to the overpayment of her disability benefits. (T. 733-67, 1362-86.)

For these reasons, the ALJ properly addressed the amount and period of the overpayment, and properly determined that the issue of waiver of overpayment was not before her.

### D. Whether the ALJ Conducted a Fair Hearing

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 9, at 13-15 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

First, Plaintiff argues that the ALJ failed to provide Plaintiff with "due process and a fair hearing" because the administrative record was missing more than 1,500 pages of evidence at the time of the hearing on June 24, 2010. (Dkt. No. 8, at 6 [Pl.'s Mem. of Law].) The ALJ acknowledged that exhibits 20 through 41 were missing at the hearing, left the record open for 30 days for Plaintiff to submit additional information, and concurrently attempted to obtain the missing records. (T. 1990, 1995, 1098.) The missing exhibits were delivered to the ALJ on June 29, 2010, were made part of the administrative record, and were copied and sent to Plaintiff. (T. 16, 135-708, 940-41.) Plaintiff had the opportunity to present her case during the four hearings,

17

and presented her arguments in various additional statements of record. (T. 733-67, 1362-86, 1892-2018.) Moreover, Plaintiff provided no proof of missing evidence that was not included in the administrative record. Accordingly, Plaintiff's argument that the Commissioner's decision was rendered with incomplete information, in violation of her due process rights, is without merit.

Second, Plaintiff argues that the ALJ engaged in misconduct by stating in her decision of October 14, 2010, that Federal Protective Services served Plaintiff's husband, Mr. Dinstber, with a violation notice for disorderly conduct and harassment at SSA's Syracuse Office of Disability Adjudication and Review (ODAR) hearing office. (Dkt. No. 8, at 7 [Pl.'s Mem. of Law].) However, a review of the decision indicates that the ALJ discussed Mr. Dinstber's behavior in explaining the reasons that he was not permitted to testify at the hearing of June 24, 2010, pursuant to HALLEX I-2-6-60. (T. 29.)

The Court must start from the presumption that an administrative adjudicator, such as an ALJ, is unbiased. *Schweiker v. McClure,* 456 U.S. 188, 195 (1982). Moreover, the Court must presume that an administrative adjudicator, such as an ALJ, will exercise his or her decision-making authority with honesty and integrity. *Withrow v. Larkin,* 421 U.S. 35, 47 (1975). Here, a review of the transcript of the hearing of June 14, 2010, does not evidence any unfair conduct by the ALJ. (T. 1985-2018.) Moreover, the Court notes that Plaintiff's claims that the ALJ was biased, engaged in misconduct, and did not provide a fair hearing were also investigated, addressed, and rejected by the Appeals Council. (T. 8, 967-68.)

For these reasons, remand is not required on this basis.

### E. Whether the ALJ Applied the Correct Legal Standards and Her Findings Were Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 9, at 2-18 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Plaintiff argues that (1) the ALJ failed to apply the correct legal standards in this matter and (2) the ALJ's factual findings were not supported by substantial evidence. (Dkt. No. 8, at 6 [Pl.'s Mem. of Law].) The Court finds that this argument lacks merit for the following two reasons. First, Plaintiff's highly generalized argument identifies no specific legal standard which the ALJ misapplied or specific finding which was unsupported by substantial evidence. (*Id.*) Second, having thoroughly reviewed the ALJ's determinations and the record evidence upon which they were based, the Court concludes that, for all of the reasons stated herein, the ALJ properly applied the correct legal standards and that each of the ALJ's findings was supported by substantial evidence.

Therefore, remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: April 19, 2016
      Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge